UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RONALD BEAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-01506-TWP-TAB |
| ) | |
| MUNCIE SANITARY DISTRICT, ) | |
| ) | |
| Defendant. ) | |

**ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed under Federal Rule of Civil Procedure 56 by Defendant Muncie Sanitary District (the "District") (Filing No. 24). Plaintiff Ronald Beal ("Beal") sued the District for purportedly violating his rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA") after the District terminated him following an accident involving a District-owned vehicle Beal was driving while on prescribed medication, and for retaliation. For the reasons stated below, the District's Motion is **granted**.

## I.   BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, they are presented in the light most favorable to Beal as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The District, which is a unit of government created to provide water and environmental sanitary services throughout Muncie, Indiana, (Filing No. 26-3 at 1), hired Beal on an at-will basis in 2010 as an "Operator" (Filing No. 26-2 at 1, 8). After working for the District for approximately

five years, Beal was promoted to the position of "Operator's Foreman." *Id.* at 8. When that job was phased out the next year, Beal transferred to a "Maintenance" role. *Id.* In this capacity, Beal was required, among other things, to drive a District-provided truck over public roads to monitor, maintain, and repair various "lift stations within the District" and to operate heavy machinery, including any District-owned "pallet jack, fork lift, manlift, overhead crane, pressure washer, sand blaster, grinder, drill press, cutting torch, welding equipment, crane, front-end loader, and scissor lift." *Id.* at 72.

On April 6, 2018, while on duty, Beal backed a District truck into a flower planter at a local supply shop, with the truck's trailer hitch displacing a few of the container's bricks. (Filing No. 26-1 at 13). There was no damage to the vehicle. *Id.* Consistent with District policy, Beal immediately notified his supervisor of the relatively minor accident, and his coworker, who had been riding along, drove the truck and Beal back to the District's Water Pollution Control Facility. *Id.* Once there, pursuant to District policy, Beal's supervisor took him for a drug screen. *Id.* at 13–15. The results of the drug screen showed the presence of Opiates, Benzodiazepine, and Oxycodone. (Filing No. 26-2 at 47.) The testing lab, consistent with general information known of this medication, provided the following warning to the District:

> The nature of this medication, as indicated in the package insert und patient literature, give reason to be aware of a possible safety issue and a quite serious liability issue in the event of an accident. This message is issued by regulation and is not intended to be a judgment about a person's fitness for duty.

*Id.* at 46. Pending full investigation of these results, the District removed safety sensitive tasks, like driving the truck and operating heavy machinery, from Beal's job duties (Filing No. 26-1 at 21). He was allowed to otherwise return to work.

On April 10, 2018, the District reprimanded Beal for failing to previously provide it with a signed Employee Medication Status form ("Form"), which per the District's Employee Handbook

2

policy, required Beal to notify it of the potentially dangerous prescriptions he was taking. (Filing No. 26-2 at 43, 49). This Form was required to be supplied by employees who perform safety sensitive duties. *Id.* Beal refused to sign the written reprimand, *id.* at 48, asserting that he had earlier provided the District with at least two completed copies of the Form (Filing No. 26-1 at 15).[1] Though he declined to endorse the reprimand, Beal later completed a Form, which indicated that he was prescribed and was taking allopurinol, lorazepam, citalopram, propranolol, and hydrocodone. (Filing No. 26-2 at 53.)

Beal's physician, Dr. Benjamin Loveridge ("Dr. Loveridge"), confirmed the prescribed medications and certified that in his opinion, Beal was approved for "Safety Sensitive Work". *Id.* at 51. Upon review of this information, the District's contracted medical review officer ("MRO") responded that unless the dosing of the lorazepam and hydrocodone were changed, she would not consider clearing Beal to complete any safety sensitive tasks for the District due to the side effect profiles of both these medications. *Id.* at 54. The MRO noted that she would "consider clearing [Beal] if his prescribing physician would change his dosing of lorazepam to take at bedtime … at least 8 hours prior to safety sensitive work and hydrocodone … to up to 2 pills daily not within 8 hours of safety sensitive work." *Id.* Dr. Loveridge declined to alter Beal's prescriptions, noting that "[d]ecreasing his medication would likely render him unable to function in normal life or hold a job." *Id.* at 55. The MRO continued to withhold approval of Beal's return to safety sensitive tasks. *Id.* at 54. Beal, after receiving notice of this information, continued to perform the non-safety sensitive portions of his job. (Filing No. 26-1 at 21.)

---

[1] Neither Beal nor the District can find any record of the purportedly already-filed Forms. (Filing No. 26-1 at 10.) Because this "contested" fact is immaterial to the claims in this case, this dispute matters not for summary judgment purposes. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

In a letter dated May 23, 2018, the District requested that Dr. Loveridge provide clarification of which duties Beal could perform on his current schedule of medication. (Filing No. 26-2 at 64–65.) Dr. Loveridge responded that in his opinion, Beal could perform all duties, including those that were safety sensitive, *id.* at 67, 68. Noting a stalemate relative to the differing medical opinions, the District informed Beal that it would like a third-party healthcare provider to examine Beal and his records to break the impasse and provide a definitive resolution. *Id.* at 70. The District offered to pay for the expenses incurred in the process, however, Beal declined to see either of the occupational specialists the District offered as examiners, and instead suggested a different choice, *id.* at 76–78. The District rejected this proposed alternative, and again provided its original proposal to Beal, along with a medical release form for him to sign. *Id.* at 69. In a letter dated July 18, 2018, the District suspended Beal without pay and provided him an ultimatum: either have the evaluation with one of their two physicians they provided, and sign the medical release form in the next week or face termination. *Id.* at 79. When Beal refused, the District terminated his employment on July 25, 2018, under its established policy that "insubordination by refusing to perform assigned work or to comply with written or verbal instruction of supervisors" was an offense that could result in termination. *Id.* at 8, 113, 115.

Four months later, on November 14, 2018, Beal filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on his disability and retaliation. *Id.* at 82.[2] Approximately two weeks later, the EEOC dismissed the Charge and issued Beal a Notice of Rights letter, letting him know, among other things, that he was now free to sue the District for the claims it dismissed. *Id.* at 83. On

---

[2] Beal also initially claimed that he filed an EEOC Charge shortly before he was terminated and another shortly after his termination. But because Beal now explicitly concedes that he has not established a retaliation claim under the ADA, *see infra* Section III.A., any dispute over the existence of these asserted earlier EEOC Charges has no bearing on Beal's remaining live claims.

March 1, 2019 Beal filed a Complaint in the Delaware Circuit Court, alleging discrimination and retaliation by the District, (Filing No. 1-2 at 3). Beal filed a first Amended Complaint on April 16, 2019, (Filing No. 1-3), and that same date, the District removed the action to federal court, (Filing No. 1). The matter is now before the Court on the District's Motion for Summary Judgment (Filing No. 24).

## II.     SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted).  "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment."  *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.   DISCUSSION

The District asks this Court to enter summary judgment in its favor on all of Beal's claims. Since the accident, Beal has intermittently advanced three claims under the ADA: (1) that the District retaliated against him for engaging in conduct protected by the ADA, (2) that the District discriminated against him because of his prescribed medications, and (3) that the District failed to reasonably accommodate his needs stemming from this prescription regime.  Because these three claims are distinct, the Court will address them separately.

**A.   Beal's retaliation claim**

In his Amended Complaint, Beal alleged that the District, in violation of the ADA, retaliated against him "for filing an EEOC complaint". (Filing No. 1-3 at 7.)  In contrast, the District noted in its summary judgment brief that Beal has failed "to come forward with any evidence suggesting Beal filed a charge with the EEOC before his termination." (Filing No. 25 at 14.)  In fact, the District has provided "evidence, by way of its Board President who presided over these interactions with Beal, declaring that it knows of no MSD employee speaking with an EEOC investigator as alleged," and that it "has no record of Beal having filed a Charge at any time prior

to his termination, and that it was not aware that Beal had *any* involvement with the EEOC" until well after he was terminated. *Id.* at 15 (emphasis in original).

In his response brief, Beal concedes that "there is no admissible evidence to support a claim for retaliation under the ADA". (Filing No. 32 at 1.[3]) Beal has explicitly abandoned his claim of ADA retaliation, accordingly, the Court **grants** summary judgment for the District on this claim.

B.      **Beal's discrimination claim**

In the Amended Complaint, Beal alleges that in attempting to force him to submit to medical inquiries and examinations (including drug tests), as well as placing him on involuntary leave and terminating him after he refused, the District discriminated against him based on his disability. (Filing No. 1-3 at 7.) The ADA generally prohibits employers from discriminating against disabled employees because of their disability. 42 U.S.C. § 12112(a). While the ADA applies this general prohibition to medical examinations and inquiries, it specifically allows examinations and inquiries "shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d) (4) (A).

In his response brief, Beal explains that "the ADA provides that a covered employer shall not 'discriminate against a qualified individual with a disability because of the disability of such individual.'" *EEOC v. Sears, Roebuck & Co.*, 417 F. 3d 789, 796-97 (7th Cir. 2005), *quoting* 42 U.S.C. § 12112(a). (Filing No. 32 at 8.) He then proceeds to argue that discrimination under the ADA, includes 'not making reasonable accommodations' and dedicates his response brief to the argument that the District failed to accommodate his disability. *Id.* But Beal fails to designate any evidence or make any argument in support of his discrimination claim based on forced medical inquiries and examinations.

---

[3] Pagination denoted on Beal's brief inadvertently labels the first page "9" and all following pages "16." The Court will cite to Beal's brief based on the pagination contained on the docket.

7

The District seeks judgment as a matter of law arguing that any medical inquiry or examination was permissible under the ADA because it would be "job-related and consistent with business necessity." (Filing No. 25 at 10). Before asking Beal to appear for any medical examination, the District highlights that Beal, following the driving accident, had tested positive for narcotics; that the testing lab warned that these discovered drugs created a serious safety and liability issue; that the MRO declined to approve Beal for safety sensitive work; that Beal's physician refused to alter his dosing; and the MRO continued to decline approval for safety sensitive work after this refusal. *Id*. at 11. A stalemate was evident after Beal's physician indicated he believed Beal could, as prescribed, perform all the abilities required of him, including safety sensitive work. *Id.* The District contends that Beal's leave placement and termination were directly tied to the insubordination following this permissible request for additional medical intervention. *Id.* at 12–13.

With Beal silent on this claim in his response, the District in reply argues that "Beal has abandoned this claim." (Filing No. 37 at 11 (citing *Teklehaimanot v. Park Ctr., Inc.*, 804 F. Supp. 2d 886, 902 (N.D. Ind. 2011) ("those claims are abandoned because they were not addressed in the response to the motion for summary judgment."))). The Court agrees with the District that Beal has abandoned this claim. *See Palmer v. Marion Cty.*, 327 F.3d 588, 597 (7th Cir. 2003) (noting that a "claim is deemed abandoned" when a plaintiff fails to defend it "in his district court brief in opposition to summary judgment"), and "it is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel," *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986). Even so, the Court will discuss why the merits of this claim fail.

Under the ADA, employers cannot wantonly compel an employee to submit to "medical examinations and inquiries." 42 U.S.C. § 12112(d)(1). As mentioned earlier, even though an employer is generally barred from ordering an employee to submit to this testing, it may assess an employee in these ways if they are "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). One way an employer can show an examination or inquiry is job-related and consistent with business activity is through the presentation of objective evidence that the employee's medical condition would impair his ability to perform "essential job functions." *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 565 (7th Cir. 2009). "An essential function is a fundamental job duty required of a person in the job; a marginal duty is not an essential function." *Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015) (citing 29 C.F.R. § 1630.2(n)(1)). Generally speaking, functions may be essential because the job exists to perform the function, a limited number of employees can perform the function, or the function is highly specialized. *Id.* (citing 29 C.F.R. § 1630.2(n)(2)). Several factors can be considered to determine whether a job function is essential:

> (i) The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

*Id.* at 717–18 (citing 29 C.F.R. § 1630.2(n)(3)).

According to the job description written before Beal assumed the role, an employee in the Maintenance position was required to operate heavy machinery, monitor lift stations across the District, and maintain the "ability to physically perform assigned duties, involving driving." (Filing No. 26-2 at 72–73). These were essential job functions of the Maintenance position—absent these

9

safety sensitive tasks, the position would be diluted beyond recognition. As Beal acknowledged at his deposition, he drove a District truck—sometimes even one equipped with a "small crane"—"[a]t least a couple times a week" and consistently operated heavy machinery (Filing No. 26-1 at 5–6). Beal contends that the District "designated no evidence to suggest that Beal's prescribed medications or medical condition impaired his ability to perform the essential functions of his job or posed a threat to anyone," (Filing No. 32 at 9). However, Beal agreed in his deposition that "opiates, even as prescribed, for some people could create a safety risk if they were doing things that might otherwise be dangerous, like operating heavy equipment or driving a vehicle on public thoroughfares". (Filing No. 26-1 at 8.) Because the drugs prescribed to Beal could impair his ability to perform the essential job functions of the Maintenance position, the evidence supports that the District complied with the requirements of the ADA when it requested that he submit to a neutral medical examination.

Another way a medical examination or inquiry can be shown to be job-related and consistent with business activity is if the employee would "pose a threat due to a medical condition." *Coffman*, 578 F.3d at 565. The District, as discussed above, had a particularly compelling interest in ensuring Beal could perform safety sensitive tasks when his fitness to perform this work was essential not only to [his] safety but to the public at large. Employers need not retain workers who, because of a disability, might harm someone. *Painter v. Illinois Dep't of Transportation*, 715 F. App'x 538, 541 (7th Cir. 2017). The District was well within its bounds under the ADA to request Beal—following multiple attempts to ameliorate the situation for its employee required to traverse public roads and operate dangerous heavy machinery—to submit to a medical examination after a standstill, to determine how to best allow him to perform his work.

Any other ruling would force the District to untenably risk a negligence suit to avoid violating the ADA.

The District was warranted—if not obligated—in ordering Beal to submit to additional medical examination. Any discipline flowing from his refusal was permissible under the ADA. Simply put, there is no evidence that Beal was placed on leave or terminated as a form of disability discrimination. *See Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 552*, 657 F.3d 595, 601 (7th Cir. 2011) (instructing that, on top of direct evidence, other evidence of disability discrimination based on an adverse job action may include "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action."). Rather, these disciplinary actions, consistent with established District policy, were based on Beal's unjustified insubordination following an ADA-compliant demand of his employer.

Because Beal has abandoned his discrimination claim, and because it fails on the merits, the Court **grants** summary judgment for the District on this claim.

C.     **Beal's failure-to-accommodate claim**

In his brief in response to the District's Motion for Summary Judgment, Beal argues that the District's purported actions "demonstrate a failure to engage in an interactive process to determine a reasonable accommodation for Beal." (Filing No. 32 at 9.) But outside of a passing mention in the factual allegations section of his Amended Complaint mentioning that he "returned a signed copy of the [Employee Medication Status] form with a request for reasonable accommodations to allow him to continue to perform his job duties" (Filing No. 1-3 at 5), this is

11

the first time Beal has argued that the District failed to accommodate him. The District argues that this deficiency is fatal to the claim: "Beal is barred from pursuing his failure-to-accommodate claim because he did not allege the claim in his EEOC Charge or Complaint." (Filing No. 37 at 4.) "Nowhere in his EEOC Charge," the District argues, "does Beal reference an accommodation, an accommodation request presented to [the District], or any indication that even remotely implies that any accommodation was denied him by [the District]." *Id.* at 5. Moreover, Beal's Amended Complaint makes no "allegation referring to accommodation, discussing whether the accommodation was granted or denied, or even indirectly pointing to a putative violation of the reasonable accommodation requirements of the ADA," avers the District. *Id.* at 6. And the claim fails substantively, purports the District, because (1) "Beal conceded during his deposition that every accommodation request he made was granted by" the District and (2) the District attempted "in good faith to fully engage in the interaction process with Beal by seeking to work with him to find a reasonable accommodation that could solve the substantial safety concerns caused by Beal's prescribed narcotics." *Id.* at 8, 10.

The Court concludes that both procedure and substance foreclose Beal's failure-to-accommodate claim from moving forward. First, a "plaintiff is barred from raising a claim in the district court that had not been raised in his or her EEOC charge unless the claim is reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018) (quoting *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999). Beal never mentioned a failure to accommodate claim in his EEOC Charge, which focused instead on accusations of discrimination (*see* Filing No. 26-2 at 82 ("I have been discriminated against when terminated from employment due to my disability.")). And because failure-to-accommodate claims and discrimination claims

12

"are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from" a disability claim, *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) (citing *Marshall v. Federal Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997), Beal cannot assert this unexhausted claim.

Moreover, despite federal pleading requiring that a "complaint need only provide notice of a plausible claim," *Auto Driveaway Franchise Systems, LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 675 (7th Cir. 2019) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)), nothing in Beal's Amended Complaint would have notified the District that he was alleging it failed to accommodate his needs. *See Twombly*, 550 U.S. at 555 (instructing that allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."). To be sure, his Amended Complaint briefly mentioned that he purportedly *provided* the District with "a request for reasonable accommodations" after his accident. ([Filing No. 1-3 at 5](#).) But this factual allegation alone would not sufficiently inform the District that Beal would argue that the District *failed to implement* any requested accommodation. *See Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted) (maintaining that a complaint must include "enough facts to state a claim to relief that is plausible on its face."). At this late stage, Beal "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996).

In addition, Beal's failure-to-accommodate claim fails on the merits. To establish this claim, Beal "must show (1) he was a qualified individual with a disability, (2) his employer was aware of his disability, and (3) the employer failed to reasonably accommodate his disability." *Youngman v. Peoria Cty.*, 947 F.3d 1037, 1042 (7th Cir. 2020) (citing *Rowlands v. United Parcel*

*Serv. - Fort Wayne*, 901 F.3d 792, 798 (7th Cir. 2018)). Even if he meets the first two elements, Beal cannot prove the third.

Beal acknowledged in his deposition that no accommodation request he made went ungranted: when the District's Attorney summarized that they had "talked about the requests for accommodations, and there was none that weren't granted," Beal confirmed "Yeah." (Filing No. 26-1 at 30.) This response alone inexorably concedes the final prong. Importantly, Beal never gave the District the chance to reasonably accommodate his needs. While "[a]n employee has the initial duty to inform the employer of a disability before ADA liability may be triggered for failure to provide accommodations[,] . . . regulations envision an interactive process that requires participation by both parties." *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1134, 1135 (7th Cir. 1996) (citing 29 C.F.R. § Pt. 1630, App.). The District and Beal, at least at first, seemed determined to find an appropriate accommodation through an interactive process—the District worked through its MRO, and Beal through Dr. Loveridge, to determine how Beal could perform his job while still taking his necessary medications. This process broke down when Dr. Loveridge declined the MRO's request that he alter Beal's prescription and Beal refused to see an independent occupational specialist to conclusively determine if he could continue to perform safety sensitive tasks as medicated. Because "courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary," *id.* at 1135, the Court finds that responsibility for failure in this process falls on Beal.

Beal has failed to show that the District did not reasonably accommodate his disability when he points to no ungranted accommodation and when he and his physician immovably impeded the neutral determination of an appropriate accommodation that could assure the safety

14

of Beal, his coworkers, and the general public. Because Beal failed to raise a failure-to-accommodate claim in either his EEOC Charge or his Amended Complaint, and because this claim fails on the merits, summary judgment is appropriate.

## IV.     CONCLUSION

For the reasons discussed above, the Court **GRANTS** the District's Motion for Summary Judgment (Filing No. 24), and Beal's claims are **dismissed**. The Unopposed Motion for Continuance (Filing No. 38) is **denied as moot**.

Final judgment will issue under separate order.

**SO ORDERED.**

Date:  10/22/2020

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Brian M. Pierce
BRIAN M. PIERCE, ATTORNEY AT LAW
brianpiercelaw@aol.com

Tyler John Moorhead
BOSE MCKINNEY & EVANS LLP
tmoorhead@boselaw.com

David L. Swider
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
dswider@boselaw.com